## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

```
==============================
                              :
AUCTUS FUND, LLC,             :
                              :
          Plaintiff,          :        Civil Action No._____
                              :
     v.                       :
                              :
NUGENE INTERNATIONAL, INC.,   :
                              :
          Defendant.          :
                              :
==============================
```

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1.     The Plaintiff, Auctus Fund, LLC (hereinafter "Auctus" or the "Fund"), respectfully submits its Complaint and Demand for Jury Trial (hereinafter the "Complaint") against the Defendant, NuGene International, Inc. (hereinafter the "Company" or "NUGN"), in the above-captioned action.  The Plaintiff's allegations, as set out herein, are asserted for damages arising from, and resulting from the Defendant's violations of the following:

a)     Section 10(b) of the Securities Exchange Act of 1934, *as amended* (hereinafter the "Exchange Act"), 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5;

b)     Massachusetts Uniform Securities Act, M.G.L. c.110A, §§ 101, *et seq.*, *as amended* (hereinafter the "Uniform Securities Act");

c)     breach of contract;

d)     breach of implied covenant of good faith and fair dealing; and/or

e)     the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §§ 2 and 11.

2.      The Plaintiff further alleges that, as a result and as caused by the Defendant's breaches, actions, omissions, policies, practices, and/or courses of conduct, Auctus has suffered irreparable harm, requiring injunctive relief and specific performance, harm to its business and reputation in the investment industry, damages from the Defendant's coercion, duress, and unfair and deceptive anti-competitive acts, causing lost revenue, lost profits and prospective business, together with its injuries and damages.

3.      The Plaintiff respectfully requests that its causes of action against the Defendant proceed to a trial by jury, that a judgment be entered on all Counts against the Defendant and that Auctus be awarded its general, compensatory and consequential damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, and grant, order and enter temporary, preliminary and permanent injunctive and equitable relief, and grant, order and enter declaratory relief, and any such other relief as this Honorable Court deems just and appropriate.

## II. **PARTIES**

4.      The Plaintiff, Auctus Fund, LLC is a limited liability company, duly organized in the State of Delaware, with its principal place of business located at 545 Boylston Street, 2nd Floor, Boston, Massachusetts 02116.

5.      Upon information and belief, the Defendant, NuGene International, Inc., is a corporation, duly organized in the State of Nevada, with its principal place of business located at 17912 Cowan, Suite A, Irvine, California 92614.

## III. **JURISDICTION AND VENUE**

6.      The Plaintiff asserts that this Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and pursuant to Section 22(a) of the Securities Act of 1933, *as*

*amended*, 15 U.S.C. § 77v(a) (hereinafter the "Securities Act"), and Section 27(a) of the Exchange Act, 15 U.S.C. §78aa(a).

7.      The Plaintiff contends that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts in that, pursuant to the Transaction Documents (defined below), the Plaintiff Auctus and Defendant NUGN agreed that any and all disputes between and/or among them shall be brought, inter alia, in the state or federal courts in the Commonwealth of Massachusetts. Additionally, this Court is in such District where the Plaintiff Auctus is headquartered and has its principal place of business and is where the violative conduct described herein is alleged to have occurred.

8.      This Court has personal jurisdiction, generally and specifically, over the Defendant by express terms of the Agreement, and as arising from its extensive business contacts, generally over time and specifically, in its business dealings with the Plaintiff within the Commonwealth.

## IV. FACTUAL BACKGROUND

### A.      The Auctus/NUGN Transaction Documents and Contracts

9.      On or about February 6, 2017, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "Purchase Agreement" or the "SPA") and a certain Convertible Promissory Note with a principal amount of Two Hundred - Seventy - Seven Thousand – Seven Hundred - Seventy - Seven and 78/100 ($277,777.78) Dollars (hereinafter the "Note," and, with the SPA, the "Transaction Documents"), thereby entering into a contract with the Fund for its investment in NUGN. *See* SPA, attached, restated and incorporated by reference herein as **Exhibit A**; Note, attached, restated and incorporated by reference herein as **Exhibit B**.

10.     A review of the Plaintiff's Transaction Documents reveals that the Note has a conversion feature into which entitles the Plaintiff to convert, at amounts and upon timing that

Auctus deemed appropriate, the Defendant's debt obligations, in whole or in part, into freely traded shares of NUGN common stock. Under the terms and conditions of the Transaction Documents, the Plaintiff has, and has had, a contractual right to convert at a price for NUGN common stock, averaged over a series of prior trading days, including and preceding the Conversion Date.

11.     Based upon its own financial statements, as originally filed with the U.S. Securities and Exchange Commission ("SEC") and which are long delayed, the Company is not likely to be able to repay the Fund, due to insufficient funds. Auctus' conversion feature allows the Plaintiff to convert and sell NUGN shares, rather simply await the repayment of principal and interest on the Convertible Promissory Note. Thus, the conversion feature of the convertible notes was and remains critical to its fair market value.

12.     By the Transaction Documents, the Defendant was also required to allocate and reserve shares of its common stock for future conversions by the Plaintiff. The reservation of shares was an independent obligation by the Defendant to the Plaintiff, and was a mechanism by which to effectuate the share conversion as envisioned by the Note.

13.     Thus, in detrimental reliance upon the information, representations and statements from the Defendant, the Plaintiff invested hundreds of thousands of dollars in the Company, which has, and has had, a fiduciary duty and a duty of the utmost loyalty to the Plaintiff. Unfortunately, to its detriment, the Plaintiff has learned that the Defendant had misrepresented and deceived the Fund, and omitted material information while having a duty of disclosure, regarding the Company's operations, finances, products, partnerships, and future prospects.

**B.     Defendant's Misrepresentations and Omissions of Material Facts and Securities Fraud in Connection with Offer, Purchase and Sale of Securities**

14.     The Plaintiff asserts and alleges that the Defendant misrepresented, omitted and failed to provide material facts to Auctus in connection with its investments and in the offer,

purchase and sale of securities, and especially with respect to the operations, business, finances and other matters of Defendant NUGN.

15.     As an example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about September 9, 2015, the Defendant published and disseminated certain statements, entitled "*NuGene Enters Into MOU With Bassett Salon Solutions to Distribute and Rollout NuGene to 7,000 Potential New Accounts,*" which provided, in part, as follows:

> "IRVINE, CA–(Marketwired – Sep 9, 2015) – NuGene International, Inc. (OTCBB: NUGN), a company which develops, manufactures and markets advanced skin and hair care lines utilizing adipose derived human stem cells and stem cell media, announced today that it has entered into a memorandum of understanding ('MOU') with Bassett Salon Solutions ('Bassett'), a distributor of high-end beauty products to over 7,000 salon accounts in the United States.
>
> Under the MOU, Bassett agrees to test market NuGene products. If the test is successful, Bassett proposes to distribute and rollout the NuGene product offering to all of its accounts by Q1 2016. The test marketing of NuGene's product line to Bassett's customers will initially start with two accounts. If that trial introduction is well received by retail customers, Bassett proposes to add additional accounts scaling up to the Q1 2016 rollout.
>
> Ward Bassett, founder and CEO of Bassett Salon Solutions, stated, 'We have spent several months researching NuGene's products, the stem cell based science that underlies them and the results of company-sponsored studies on the efficacy of the products. We have visited the facility, heard the story, sampled the products, and we agree that we could be a good fit together. We believe that NuGene has attractively packaged superior products that will be well accepted by the accounts which we serve.'
>
> Ali Kharazmi, co-founder and CEO of NuGene International, stated, 'We identified Bassett Salon Solutions early on as an excellent fit to distribute and rollout our product offerings based on their superior industry reputation. Their size, knowledgeable account reps and ability to sell to high-end accounts make them an ideal partner. We look forward to beginning a long and mutually prosperous relationship.'"

16.     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff, particularly, upon information and belief, relating to its business relationship

as a "partner[ship]" with Bassett Salon Solutions for distribution and a "rollout" of the Company's

"product offerings" and as the "beginning [of] a long and mutually prosperous relationship."

17.     As a further example of the material misrepresentations, omissions and false

information provided to the Plaintiff, on or about October 19, 2015, the Defendant published and

disseminated certain statements, entitled "*NuGene International, Inc. Files Provisional Patent*

*Applications to Enhance Wound Treatment by Combining Micro-Current Electro-Active*

*Dressings with Human Adipose-Derived Stem Cell Media,*" which provided, in part, as follows:

> "IRVINE, Calif., Oct. 19, 2015 /PRNewswire/ — NuGene International, Inc. ("NuGene") (NUGN), a developer, manufacturer and marketer of advanced skin and hair care lines utilizing adipose derived human stem cells and stem cell media, announced today that it has filed additional provisional patents to extend the intellectual property around its proprietary stem cell formulations.
>
> The Company has filed two provisional patent applications in the U.S. Patent and Trademark Office for inventions relating to electro-active dressings and bandages. These include inventions combining electro-active sterile dressings and NuGene's proprietary human adipose derived stem cell culture media.
>
> Human adipose-derived stem cells produce a variety of growth-promoting and healing materials such as growth factors and cytokines. Electro-active wound dressings produce local electric fields by providing electrical half-cells in proximity to treat the skin. Management believes that this innovative intellectual property may combine the benefits of the growth factors and localized electric fields to promote healing of wounds.
>
> 'Combining the effects of stem cell media with electro-active dressings may create a powerful new healing regimen,' stated Dr. Sanjay Dhar, NuGene's Executive Director of Research and Development. 'The stimulation provided by electro-active dressings and the properties of human adipose-derived stem cell media may prove to effectively promote better and faster healing with less scar tissue. We believe that seeking protection for our applied research through the patent application process enhances the value of our intellectual property portfolio.'
>
> … NuGene is investigating the enhancement of healing by combining its proprietary stem cell media with micro-current electro-active dressings. The company intends to apply this technology to both medical and aesthetic fields."

18.     Upon information and belief, the Defendant's statements were incomplete,

misleading, and/or misrepresentative or omitted material information with a duty to disclose the

same to the Plaintiff, particularly, upon information and belief, relating to its representations that: a) the Company believes such intellectual property may "combine the benefits of the growth factors and localized electric fields to promote healing of wounds;" b) "[c]ombining the effects of stem cell media with electro-active dressings may create a powerful new healing regimen;" c) the "stimulation" … may prove to "effectively promote better and faster healing with less scar tissue;" and d) NUGN "intends to apply this technology to both medical and aesthetic fields."

19.     As a further example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about July 27, 2016, the Defendant published and disseminated certain statements, entitled "*NuGene International, Inc. Names Botox® Visionary and Former CEO of Obagi Medical Products, Steve Carlson, to Serve as CEO and President*," which provided, in part, as follows:

> IRVINE, Calif., July 27, 2016 (GLOBE NEWSWIRE) — NuGene International, Inc. ("NuGene") (OTC BB:NUGN), a developer, manufacturer and marketer of advanced skin and hair care lines utilizing adipose derived (non-embryonic) human stem cell conditioned media, announced today that it has appointed Steve Carlson as CEO and President….
>
> Mr. Carlson added, 'I am honored to lead this emerging premier stem cell-based skin care company. NuGene's growth potential is limitless. I believe its technology holds promise for regenerative properties that translate into exciting prospects in the areas of therapeutic skin care, wound healing, debilitating skin conditions and hair disorders….'"

20.     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff, particularly, upon information and belief, relating to its representations that the Company's "growth potential is limitless."

21.     As a further example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about January 18, 2017, the Defendant published and

disseminated certain statements, entitled *"Newly Improved Formulation Leverages NuGene's Proprietary Stem Cell Technology,"* which provided, in pertinent part, as follows:

> "IRVINE, CA — (Marketwired) — 01/18/17 — NuGene International, Inc. ('NuGene') (OTCQB:NUGN), a developer, manufacturer, and marketer of advanced skin and hair care lines utilizing human adipose derived stem cell conditioned media, today announced the targeted launch of its newly reformulated REVELLUS™ Hair Fortifying Serum, which is designed to help improve the overall vitality of the scalp and promote the appearance of fuller, thicker, and more voluminous hair….
>
> 'The REVELLUS™ Hair Fortifying Serum … leverages our stem cell based growth factor technology and expertise, which is proving to be very effective in combatting the effects of aging on the hair and skin,' said Steve Carlson, CEO of NuGene International…."

22.    Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff, particularly, upon information and belief, relating to its representations that the Company's "is proving to be very effective in combatting the effects of aging on the hair and skin…."

23.    As further evidence of its violations of the federal securities laws, the Defendant failed to timely file its Form 10-K for the 2016 fiscal year 2016 until on or about April 12, 2017, which was well after the Plaintiff had invested in the Company. Indeed, the NUGN Form 10-K revealed the depth of the fraud and deceit, as having been perpetrated upon the Plaintiff. See NUGN 2016 Form 10-K, dated April 12, 2017, as attached, restated and incorporated by reference herein as **Exhibit C**.

24.    Solely as examples of the misrepresentations by the Defendant, the Company's Form 10-K reveals that NUGN had accumulated a deficit of $18.4 million since inception. *Id.* (**Exhibit C**), at p.44. The financials raise "substantial doubt" about the Company's ability to continue as a "going concern." *Id.* (**Exhibit C**), at p.42. NUGN reported a net loss of $5,219,067.00

in 2015, and in 2016, the net loss increased to $11,816,521.00. *Id.* (**Exhibit C**), at p.44. The Company states that the Defendant "does not have the sufficient cash resources available to meet its planned business objectives." *Id.* (**Exhibit C**), at p.42. Additionally, in its Form 10-K, the Defendant stated that "we expect to continue to incur significant operating losses for at least the next several years." *Id.* (**Exhibit C**), at p.13.

25.     There can be no dispute that, throughout the SEC filing, the Company's Form 10-K revealed the extent of the Based upon the securities fraud perpetrated by the Defendant in connection with the offer, purchase and sale of NUGN securities, and the depth of the misrepresentations by NUGN regarding its operations, finances, products, partnerships, and future prospects, and the omissions of material fact, in its communications with the Plaintiff.

### C.     Defendant's Events of Default and Breaches of the SPA and Note

26.     The Plaintiff asserts that the Company incurred and/or caused several Events of Default, as set forth in Article III, entitled "Events of Default," of the Note. These Events of Default included, inter alia, breaches of following provisions of the Transaction Documents: a) Sections 2.8 (Non-circumvention); b) 3.2 (Failure to honor conversion); c) 3.4 ( Breach of Agreements and Covenants – Section 2.8 of the Note – Non-circumvention); d) 3.10 (Failure to Comply with the Exchange Act); e) 4.15 (failure to register AFL shares); and f) Section 3.5 (Breach of Representations and Warranties -Section 3(g) (SEC Documents; Financial Statements)) of that certain Securities Purchase Agreement (the "SPA") by and between NUGN and Auctus dated February 6, 2017; i) Section 3.10 (Failure to Comply with the Exchange Act); and j) Section 4.14 (Failure to notify of Future Financing). *See* Demand Letter, attached, restated and incorporated by reference herein as **Exhibit D**.

27.     Thereafter, it is undisputed that the Company incurred and/or caused several Events of Default, as set forth in Article III, entitled "*Events of Default*," of the Auctus Note. In addition, pursuant to Section 3.1, an Event of Default shall have occurred by the failure of the Company to pay the principal or interest when due on the Note, whether at maturity, upon acceleration, or otherwise. *See* Note (**Exhibit B)** § 3.1. This Event of Default, together with others, have occurred and continue to occur.

28.     Upon the occurrence of an Event of Default under Section 3.1 of the Auctus Note, the entire principal and accrued interest shall be due and owing hereunder. Furthermore, an Event of Default pursuant to Section 3 of such Note, the Company is required to pay, and shall pay, Plaintiff Auctus the "Default Sum" (as defined therein), due under the Note as multiplied by One Hundred - Fifty and 00/100 (150.00%) percent. Thus, as of July 14, 2020, the Company owes Plaintiff Auctus, under the SPA and the Note, the Default Sum Totaling Seven Hundred – Sixty – Nine Thousand, Two Hundred – Ninety – Eight and 97/100 (**$769,298.97)** Dollars (U.S.). *See* **Exhibit 1**, dated as of July 14, 2020, as attached, restated and incorporated by reference herein. Until paid, the Default Sum shall continue to accrue the default interest rate of Twenty-four and 00/100 (24.00%) percent per year, provided by the Note.

29.     In sum, the Defendant has committed securities fraud, unfair and deceptive trade practices, and has perpetrated a fraud and deceit upon the Plaintiff, which suffered as a consequence. Throughout, the Defendant has been unjustly enriched and converted the Plaintiff's assets, causing it to suffer further damages and injuries. As a result of the fraudulent scheme, actions, concealment, and omissions of the Defendant, the Plaintiff lost substantial monies and lost opportunity in such assets.

## V. <u>VIOLATIONS OF LAW</u>

### <u>COUNT I –VIOLATIONS OF FEDERAL SECURITIES LAWS</u>

30.     The Plaintiff reasserts Paragraphs 1 through 29 of the Complaint, together with **<u>Exhibits</u>**, and restates and incorporates them herein by reference.

31.     The Defendant violated the Securities Act, 15 U.S.C §77a, et seq., in addition to Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, in that, as described herein, and in connection with the purchase, offer and sale of securities, they knowingly, recklessly and intentionally:

    a)     employed manipulative and deceptive devices and contrivances;

    b)     employed devices, schemes and artifices to defraud;

    c)     made untrue statements of material fact and omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and

    d)     engaged in acts, practices and a course of business which operated as a fraud or deceit upon the Plaintiff.

32.     During the relevant time period and as set forth herein, the Defendant, directly and/or indirectly, engaged in one or more common plans, schemes, and unlawful courses of conduct, to operate or perpetrate a fraud or deceit upon the Plaintiff, in connection with the offer, purchase and/or sale of NUGN securities.

33.     During the relevant time period and as set forth herein, the Defendant, directly and/or indirectly, knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff in connection with the offer, purchase and/or sale of NUGN securities.

34.     During the relevant time period and as set forth herein, the Defendant, directly and/or indirectly, published and disseminated false, deceptive and untrue statements of material facts to the Plaintiff in connection with the offer, purchase and/or sale of NUGN securities.

35.     During the relevant time period and as set forth herein, the Defendant omitted material facts, with a duty to disclose such material facts, which a reasonable investor would require in order to make its investment decision, and in order to mislead the Plaintiff in connection with the offer, purchase and/or sale of NUGN securities.

36.     During the relevant time period and as set forth herein, the Defendant made misrepresentations of material fact, and/or omitted material facts while a duty to disclose the same, which a reasonable investor, including the Plaintiff, would require in making its investment decision, and upon which it relied, to its detriment.

37.     During the relevant time period and as set forth herein, the Defendant's purpose and effect of the scheme, plan, and unlawful course of conduct was, *inter alia,* to induce Plaintiff and others to purchase NUGN securities.

38.     As a direct and proximate cause of the violations of the federal securities laws by the Defendant, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

## COUNT II –VIOLATIONS OF MASSACHUSETTS STATE SECURITIES LAWS

39.     The Plaintiff reasserts Paragraphs 1 through 38 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

40.     The Defendant violated the Massachusetts Uniform Securities Act, Massachusetts General Laws Chapter 110A, §§ 101, *et seq., as amended,* in that, as described herein, it offered and sold securities by means of untrue statements of material fact.

41.     The Defendant recklessly and intentionally misrepresented material information and omitted disclosure of material information to the Plaintiff in connection with the offer, purchase and sale of securities in the Commonwealth of Massachusetts.

42.     During the relevant time period and as set forth herein, the Defendant, directly and/or indirectly, engaged in one or more common plans, schemes, and unlawful courses of conduct, to operate or perpetrate a fraud or deceit upon the Plaintiff, in connection with the offer, purchase and/or sale of NUGN securities.

43.     During the relevant time period and as set forth herein, the Defendant, directly and/or indirectly, knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff in connection with the offer, purchase and/or sale of NUGN securities.

44.     During the relevant time period and as set forth herein, the Defendant, directly and/or indirectly, published and disseminated false, deceptive and untrue statements of material facts to the Plaintiff in connection with the offer, purchase and/or sale of NUGN securities.

45.     During the relevant time period and as set forth herein, the Defendant omitted material facts, with a duty to disclose such material facts, which a reasonable investor would require in order to make its investment decision, and in order to mislead the Plaintiff in connection with the offer, purchase and/or sale of NUGN securities.

46.     During the relevant time period and as set forth herein, the Defendant made misrepresentations of material fact, and/or omitted material facts while a duty to disclose the same,

which a reasonable investor, including the Plaintiff, would require in making its investment decision, and upon which it relied, to its detriment.

47.     During the relevant time period and as set forth herein, the Defendant's purpose and effect of the scheme, plan, and unlawful course of conduct was, *inter alia,* to induce Plaintiff and others to purchase NUGN securities.

48.     As a direct and proximate cause of the violations of the Massachusetts state securities laws by the Defendant, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

**COUNT III – BREACH OF CONTRACT**

49.     The Plaintiff reasserts Paragraphs 1 through 48 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

50.     Pursuant to the Purchase Agreement and the Note, the Fund invested in the Company and sought to become a shareholder, in good faith, to join the Company in the accomplishment of its business goals and in accordance with the standards of the business and the securities industry.

51.     The Fund alleges that the Company is liable for a breach of contract and for a breach of an implied covenant of good faith and fair dealing. A breach of contract is failure without excuse to perform a duty which is due under the contract. Additionally, the interpretation of a contract is a question of law, not fact. If the wording is not ambiguous, then the contract must be enforced according to its plain terms.

52.     The Plaintiff performed its obligations under the Purchase Agreement, and the Note, and in good faith.

53.     The Defendant, by its conduct described herein, violated the Purchase Agreement, and the Note, breaching its contract with the Plaintiff.

54.     As a direct and proximate cause of the Defendant's breaches of its contract, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT IV – BREACHES OF IMPLIED
## COVENANT OF GOOD FAITH AND FAIR DEALING

55.     The Plaintiff reasserts Paragraphs 1 through 54 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

56.     It is well established in that every contract carries an implied covenant of good faith and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the contract shall take any action to harm another party's rights under the contract. The duty imposed by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement on faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.

57.     A breach of contract is the failure to perform for which legal excuse is lacking. As a matter of law, a contract existed, which the Company breached and failed to comply with the covenant of good faith and fair dealing. The law is clear - the Fund had a binding contract and the Company has no legal basis, as a matter of law, to avoid its obligations under the Transaction

Documents, including but not limited to damages which arose, and which might arise, as a result from the breach of such Transaction Documents.

58.     The Defendant had a duty of good faith and fair dealing in its dealings with the Plaintiff and pursuant to the promises, contract, and statements made to the Plaintiff to induce it to enter into the contract and provide assets to the Defendant in exchange for its promise to repay the same, with interest.

59.     Under the covenant, the Defendant was obligated to a good faith performance of its obligations under the Transaction Documents with Auctus, and to be faithful and consistent to the justified expectations of the Plaintiff.

60.     As described above, the Defendant breached the implied covenant of good faith and fair dealing with the Plaintiff.

61.     As a direct and proximate cause of the Defendant's breaches of the implied covenant of good faith and fair dealing, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT V - VIOLATIONS OF MASSACHUSETTS
## CONSUMER PROTECTION ACT / M.G.L. C. 93A, §§ 2 & 11

62.     The Plaintiff reasserts Paragraphs 1 through 61 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

63.     At all relevant times herein, the Defendant conducted a trade or business, as defined by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth of Massachusetts.

64.     The conduct of the Defendant as described herein, constitutes unfair and deceptive trade practices, under Sections 2 and 11 of the Consumer Protection Act, including but not limited to claims that the Defendant:

a)      executed the Transaction Documents with full knowledge and understanding of the Defendant's obligations to the Plaintiff;

b)      fraudulently induced the Plaintiff to invest in the Company and thereby breached its promise to the Plaintiff;

c)      fraudulently concealed from the Plaintiff the full and complete financial and operational details and prospects of the Company in inducing the Plaintiff to make its investment in the Company;

d)      knowingly and intentionally concealed these activities from the Plaintiff, to its detriment; and/or

e)      violated the requirements, terms and conditions of existing statutes, rules and regulations meant for the protection of the public's health, safety or welfare.

65.     As a direct and proximate cause of the Defendant's violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, Sections 2 and 11, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## VI. <u>REQUESTS FOR RELIEF</u>

WHEREFORE, the Plaintiff, Auctus Fund, LLC, respectfully request that this Honorable Court grant it the following relief:

A)      Order, grant and enter temporary, preliminary and permanent injunctive and equitable relief, and specific performance, and finding that the Plaintiff has suffered irreparable harm, has a likelihood of success on the merits, that the balance of hardships favors the Plaintiff and that it is in the public interest to grant such temporary, preliminary and permanent injunctive and equitable relief, and specific performance for the benefit of the Plaintiff, as set forth herein;

B)      Determine that the Defendant is liable for all damages, losses, and costs, as alleged herein;

C)      Determine and award the Plaintiff, Auctus Fund, LLC, the actual losses sustained by it as a result of the violations of law by the Defendant, as set forth herein;

D)      Render a judgment and decision on behalf of the Plaintiff, Auctus Fund, LLC, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendant is liable, in all respects;

E)      Order, decide, adjudge, and determine that the liability of the Defendant, is for all losses, injuries, and damages, special, consequential, general, punitive, and/or otherwise, and for all interest and costs, as alleged herein;

F)      Award the Plaintiff, Auctus Fund, LLC, its costs, including, but not limited to, filing fees, costs, expenses and interest, for being required to prosecute this action;

G)      Award the Plaintiff, Auctus Fund, LLC, its actual attorneys' fees, for being required to prosecute this action;

H)      Award the Plaintiff, Auctus Fund, LLC, multiple, double, treble, and/or punitive

damages in an amount to be determined;

I)      Enter judgment on behalf of the Plaintiff, Auctus Fund, LLC, on the Complaint;

J)      Order declaratory relief, as appropriate and as this Honorable Court deems

necessary; and/or

K)      Any additional relief, which this Honorable Court deems just and proper.


### THE PLAINTIFF, AUCTUS FUND LLC, DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE


Respectfully Submitted,
PLAINTIFF, Auctus Fund LLC,

By its Attorneys,


    /s/  *Philip M. Giordano*
Philip M. Giordano, Esq. (BBO No. 193530)
Sophia E. Kyziridis, Esq. (BBO No. 703590)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com
Dated: July 15, 2020                    Email:skyziridis@reedgiordano.com