UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AUCTUS FUND, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NUGENE INTERNATIONAL, INC.,<br><br>Defendant. | Civil Action No.  20-cv-11336-ADB |

## MEMORANDUM AND ORDER ON MOTION FOR DEFAULT JUDGMENT

BURROUGHS, D.J.

Plaintiff Auctus Fund, LLC ("Auctus") brings this action asserting claims against Defendant NuGene International, Inc. ("NuGene") for violations of federal and state securities laws, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of Massachusetts' consumer protection statute.  See [ECF No. 1 ("Compl.")]. Currently before the Court is Auctus' motion for default judgment.  [ECF No. 16].  For the reasons set forth below, Auctus' motion is DENIED.

I.      BACKGROUND

   A.     Procedural Background

Auctus filed its complaint on July 15, 2020, alleging violations of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and its implementing regulations (Count I); violations of the Massachusetts Uniform Securities Act (Count II); breach of contract (Count III); breach of the implied covenant of good faith and fair dealing (Count IV); and violations of the Massachusetts Consumer Protection Act (Count V).  [Compl.].  On October 13, 2020, Auctus sought an extension of time to serve process on NuGene.  [ECF No. 4].  On October 15, 2020,

1

the Court directed Auctus to comply with this district's local rules by filing an accompanying affidavit, [ECF No. 5], and on November 2, 2020, because Auctus had not yet done so, the Court ordered Auctus to show cause as to why its complaint should not be dismissed for failure to timely effect service of process, [ECF No. 6]. On November 9, 2020, Auctus responded to the Court's show cause Order, indicating that it had served NuGene on October 14, 2020, one day after Federal Rule of Civil Procedure 4's ninety-day service period had ended.[1] [ECF No. 7 at 1]; see [ECF No. 11 (affidavit of service)]. On November 12, 2020, Auctus requested an entry of default pursuant to Federal Rule of Civil Procedure 55, [ECF No 12], which the clerk entered the next day, [ECF No. 13]. On February 17, 2021, Auctus moved for a default judgment awarding damages (both compensatory and punitive), attorneys' fees, costs, and injunctive relief. [ECF No. 16].

### B. Factual Background

Under Federal Rule of Civil Procedure 55, an entry of default against a defendant constitutes an admission of liability. SEC v. Esposito, 260 F. Supp. 3d 79, 84 (D. Mass. 2017). NuGene is therefore "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability." Id. (quoting In re The Home Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002)). "On a motion for a default judgment, however, it is appropriate to independently 'examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action.'" Id. (quoting Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002)). Accordingly, the Court summarizes the facts as alleged in the complaint.

---

[1] The Court excused Auctus' noncompliance with the ninety-day deadline pursuant to Federal Rule of Civil Procedure 4(m).

Auctus is a Delaware limited liability company with its principal place of business in Massachusetts. [Compl. ¶ 4]. NuGene is a Nevada corporation with its principal place of business in California. [Id. ¶ 5]. On or about February 6, 2017, Auctus and NuGene executed a Securities Purchase Agreement (the "SPA") and a Convertible Promissory Note with a principal amount of $277,777.78 and a maturity date of November 6, 2017 (the "Note," and, together with the SPA, the "Loan Documents"). [Id. ¶ 9; ECF No. 1-3 at 2]. Pursuant to the Loan Documents, Auctus was entitled to convert its debt into NuGene stock at prices based on a pre-determined formula. [Compl. ¶ 10]. NuGene defaulted and is no longer financially capable of paying back the loan. [Id. ¶ 11].

According to Auctus, NuGene made a series of misleading statements between September 2015 and January 2017: (1) a September 9, 2015 statement regarding NuGene's business venture with Bassett Salon Solutions ("Bassett"), [Compl. ¶¶ 15–16]; (2) an October 19, 2015 statement concerning NuGene's provisional patent applications, [id. ¶¶ 17–18]; (3) a July 27, 2016 statement related to NuGene's hiring of a new CEO, [id. ¶¶ 19–20]; and (4) a January 18, 2017 statement about a particular product's effectiveness, [id. ¶¶ 21–22]. Auctus maintains that NuGene's Form 10-K, which was filed on or about April 12, 2017 and discloses that the company was experiencing significant financial difficulties, demonstrates that NuGene's prior statements were materially misleading. [Id. ¶¶ 23–25].

Additionally, Auctus alleges that NuGene breached multiple provisions of the Loan Documents, which qualified as events of default. [Compl. ¶ 26]. Those events of default, in turn, triggered NuGene's obligation to pay off the Note immediately, which NuGene did not do. [Id. ¶¶ 27–28]. Auctus maintains that, based on interest and penalties, NuGene owed

$769,298.97 as of July 14, 2020, and that sum has and will continue to grow based on the Note's 24% default interest rate.  [Id. ¶ 28].

## II.     LEGAL STANDARD

> Section 10(b) of the Securities Exchange Act of 1934 forbids the "use or employ, in connection with the purchase or sale of any security . . . , [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 318 (2007) (alterations in original) (quoting 15 U.S.C. § 78j(b)).  In turn, United States Securities and Exchange Commission ("SEC") Rule 10b-5 implements § 10(b) by declaring it unlawful, "in connection with the purchase or sale of any security,"

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

17 C.F.R. § 240.10b-5.  Therefore,

> a complaint alleging securities fraud under section 10(b) of the Exchange Act and [SEC] Rule 10b-5 must plead six elements: "(1) a material misrepresentation or omission; (2) scienter, or a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation."

Kader v. Sarepta Therapeutics, Inc., 887 F.3d 48, 56 (1st Cir. 2018) (quoting ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008)).

To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Further, Plaintiffs must satisfy the Federal Rule of Civil Procedure 9(b) standard for alleging fraud with particularity and comply with the heightened pleading requirements imposed by the

Private Securities Litigation Reform Act (the "PSLRA"). See Advest, Inc., 512 F.3d at 58. The PSLRA "requires plaintiffs' complaint to 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading.'" Id. (alteration in original) (quoting 15 U.S.C. § 78u-4(b)(1)).

> Scienter is a mental state embracing intent to deceive, manipulate, or defraud. The scienter element may be satisfied by showing that the defendant engaged in intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities. A plaintiff can also demonstrate scienter by showing that defendants acted with a high degree of recklessness. Under the recklessness standard, a defendant can be held liable for a highly unreasonable omission, involving not merely simple, or even inexcusable, negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious the actor must have been aware of it.
>
> The PSLRA mandates a special standard for measuring whether allegations of scienter survive a motion to dismiss. A complaint alleging securities fraud must, with respect to each alleged act or omission, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. A plaintiff must allege facts that make an inference of scienter more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. When there are equally strong inferences for and against scienter, the draw is awarded to the plaintiff.

City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp., 632 F.3d 751, 757 (1st Cir. 2011) (citations and internal quotation marks omitted).

### III.   DISCUSSION

The Court is independently obligated to scrutinize Auctus' complaint to determine whether it states a claim. Auctus Fund, LLC v. Sauer Energy, Inc., 444 F. Supp. 3d 279, 284 (D. Mass. 2020); Esposito, 260 F. Supp. 3d at 84. When doing so, the Court sets aside any legal conclusions, focusing exclusively on factual allegations. Sauer Energy, 444 F. Supp. 3d at 285.

Private plaintiffs asserting securities fraud claims, like Auctus, must plead six elements: (1) a material misrepresentation or omission; (2) scienter; (3) a relationship with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. Kader, 887 F.3d at 56.

Additionally, under the PSLRA, a plaintiff must allege facts giving rise to a strong inference of scienter, City of Dearborn Heights, 632 F.3d at 757, and plead specific facts plausibly suggesting that each allegedly misleading statement is, in fact, misleading, Advest, Inc., 512 F.3d at 58. Auctus' allegations fall short for multiple reasons. As this Court has observed in other litigations involving Auctus, Auctus appears to be in the business of making risky investments. See Auctus Fund, LLC v. ERHC Energy, Inc., No. 18-cv-10216, 2019 WL 1316749, at *2 (D. Mass. Mar. 21, 2019); Auctus Fund, LLC v. First Columbia Gold Corp., No. 17-cv-10543, 2019 WL 1316736, at *2 (D. Mass. Mar. 21, 2019). For the reasons discussed below, nothing in the complaint here indicates that Auctus was misled into doing so.

     As an initial matter, it appears as though Auctus' securities fraud theory has shifted over time. In its complaint, Auctus focused on four public statements that NuGene made between September 2015 and January 2017. See [Compl. ¶¶ 15–22]. In its brief on the instant motion, however, Auctus focuses on representations and warranties in the Loan Documents, asserting that they were misleading when made. See [ECF No. 17 at 5–9]. Because, in reviewing a motion for a default judgment, the Court is limited to the allegations in the complaint, new allegations or altered theories of the case are not properly raised in a brief. See Ramos-Falcon, 301 F.3d at 2 (noting that, in assessing a motion for default judgment, the court "may examine a plaintiff's *complaint*, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action" (emphasis added)); cf. Klein v. MHM Correctional Servs., Inc., No. 08-cv-11814, 2010 WL 3245291, at *2 (D. Mass. Aug. 16, 2010) ("For the purposes of deciding whether a plaintiff's factual allegations are sufficient in the context of a motion to dismiss under Rule 12(b)(6), the court may not look beyond the complaint to facts alleged solely in a plaintiff's

6

moving papers."). Nevertheless, in the interests of completeness and efficiency, the Court will address both of Auctus' theories.

### A. Auctus Fails to Adequately Allege that the Statements Were Misleading

Auctus has failed to plead facts plausibly suggesting that NuGene's statements were false or misleading.

With respect to the allegedly misleading public statements referenced in the complaint, in connection with each statement, Auctus merely alleges, in a conclusory fashion, that the statement was misleading and highlights specific portions of the statement. See [Compl. ¶¶ 16, 18, 20, 22]. For instance, Auctus alleges that Ali Kharazmi's statement regarding NuGene's partnership with Bassett was "incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the [Auctus], particularly, upon information and belief, relating to its business relationship as a 'partner[ship]' with [Bassett] for distribution and a 'rollout' of the Company's 'product offerings' and as the 'beginning [of] a long and mutually prosperous relationship.'" [Id. ¶ 16]. There are no allegations in the complaint, however, that show how the statements were misleading, for example, by suggesting that NuGene did not enter into a partnership with Bassett for the distribution of its products or that NuGene did not, at that point in time, believe the relationship with Bassett would be long and mutually prosperous. Similarly, although Auctus alleges that Steve Carlson's January 2017 statement concerning one of NuGene's products, a hair serum, was "incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff, particularly, upon information and belief, relating to its representations that the Company's [sic] 'is proving to be very effective in combatting the effects of aging on the hair and skin,'" [id. ¶ 22], there are no factual allegations that suggest that the claims were

misleading, such as that the hair serum, as of the time the statement was made, was not proving effective.

Auctus fares no better with respect to the representations and warranties in the Loan Documents. It specifies nineteen representations or warranties that it maintains were misleading but fails to provide factual allegations plausibly suggesting that they were, in fact, misleading. See [ECF No. 17 at 6–8]. For instance, Auctus takes issue with the representations that NuGene made regarding the timeliness and accuracy of its prior SEC filings (and the fact that it had furnished accurate copies of such filings to Auctus), see [id. at 6–7; ECF No. 16-4 at 9–10], but does not make any factual allegations that show how those representations were false or misleading (i.e., suggesting that NuGene's past filings were untimely or inaccurate, or that NuGene had failed to provide Auctus with accurate copies).[2] Similarly, Auctus identifies as misleading NuGene's representations that (1) since September 30, 2016, there had been no material adverse changes to, or developments regarding, its financial situation and (2) neither it nor its subsidiaries were subject to legal restrictions or contracts which would have a material adverse effect on the company. [ECF No. 17 at 7; ECF No. 16-4 at 10]. Once again, however, Auctus fails to plead any facts suggesting that these statements were, in fact, misleading when made (i.e., suggesting that there were adverse changes between September 30, 2016 and February 6, 2017 or that there were legal restrictions or contracts which would have a material adverse effect on NuGene). Auctus also fails to allege facts suggesting that the other allegedly misleading representations and warranties contained in the Loan Documents were misleading.

---

[2] Auctus argues that, after the Loan Documents were executed, Nugene failed to timely file required SEC forms. See [Compl. ¶ 23; ECF No. 17 at 8–9]. That fact, however, does not suggest that Nugene's representations, regarding its *past* compliance with SEC filing requirements, were misleading.

See, e.g., [ECF No. 17 at 8 (stating that NuGene's statement regarding a qualified audit opinion was misleading but failing to specifically identify why)].

Without more specific allegations, the Court cannot plausibly infer that the statements were misleading, and Auctus' Exchange Act claim therefore fails.

B.      **Auctus Fails to Adequately Plead Scienter**

Auctus has failed to allege facts supporting a strong inference of scienter.

As to the allegedly misleading statements actually identified in the complaint, Auctus' allegations again fall short. Auctus makes no specific allegations regarding the individuals who made these statements. For example, there are no factual allegations suggesting that when Mr. Kharazmi discussed NuGene's venture with Bassett in September 2015, he was intending to deceive investors or that his statements were reckless enough to constitute "an extreme departure from the standards of ordinary care." City of Dearborn Heights, 632 F.3d at 757. In fact, Kharazmi is mentioned in the complaint only once. See [Compl. ¶ 15 ("Ali Kharazmi, a co-founder and CEO of NuGene International, stated . . ."]. Similarly, the complaint lacks any factual allegations regarding Dr. Sanjay Dhar beyond the fact that he made the allegedly misleading statement. See [id. ¶¶ 17–18]. Auctus' allegations about Steve Carlson, who made the other two allegedly misleading statements, are equally deficient. See [id. ¶¶ 19–22]. In short, there is nothing in the complaint that leads to any inference of scienter, let alone a strong one, with respect to these four public statements.

As to the representations and warranties contained in the Loan Documents, Auctus' allegations are similarly lacking. Auctus urges the Court to "infer that [NuGene] acted with 'scienter' . . . by the immediacy of its demise and financial problems after in [sic] its transaction with Auctus." [ECF No. 17 at 5]. Timing, alone, however does not give rise to a strong

9

inference of scienter, and Auctus has failed to plead anything close to what the First Circuit has typically required, see Mehta v. Ocular Therapeutix, Inc., 955 F.3d 194, 206–207 (1st Cir. 2020) ("We have found this demanding standard met where a complaint 'contains clear allegations of admissions, internal records or witnessed discussions suggesting that at the time they made the statements claimed to be misleading, the defendant[s] were aware that they were withholding vital information or at least were warned by others that this was so.'" (quoting Brennan v. Zafgen, Inc., 853 F.3d 606, 614 (1st Cir. 2017))).  Auctus seems to argue that because NuGene reported poor financial performance in its 2016 10-K, its previous statements related to its financial condition must have been intentionally or recklessly fraudulent.  See [Compl. ¶¶ 23–24; ECF No. 17 at 5–8].  Plaintiffs, however, must do more than merely allege that financial projections proved incorrect.  See Advest, Inc., 512 F.3d at 62 ("A plaintiff may not plead 'fraud by hindsight'; i.e., a complaint 'may not simply contrast a defendant's past optimism with less favorable actual results' in support of a claim of securities fraud." (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1223 (1st Cir. 1996)); Metzler Asset Mgmt. GmbH v. Kingsley, 305 F. Supp. 3d 181, 204 (D. Mass. 2018) ("However, a plaintiff may not simply rely on a 'fraud by hindsight' theory of scienter—that is, 'a plaintiff may not simply contrast a defendant's past optimism with less favorable actual results, and then contend that the difference must be attributable to fraud.'" (quoting Shaw, 82 F.3d at 1223)), aff'd 928 F.3d 151 (1st Cir. 2019). Thus, apart from timing-based speculation, Auctus has given the Court no basis to infer that NuGene made the representations and warranties at issue with scienter.

The Court must also consider "competing inferences rationally drawn from the facts alleged." Tellabs, 551 U.S. at 314.  Based on the facts alleged (as well as the documents filed with the complaint and Auctus' motion), the Court finds that the opposing inference of

10

nonfraudulent intent is far more cogent and compelling than the inference of scienter. See City of Dearborn Heights, 632 F.3d at 757. Specifically, the allegations and documents suggest that: (1) NuGene was a small-cap company, with stock traded over-the-counter, that was struggling financially and in need of a capital injection, [ECF No. 16-1 at 7–8]; (2) Auctus conducted due diligence before investing, [id. at 2]; (3) the Note's terms—including its high interest rate (10%),[3] even higher default interest rate (24%), and the fact that it matured in nine months— reflect the fact that NuGene was a risky investment and likely could not borrow money on more favorable terms because of its precarious financial situation, [ECF No. 16-5]; (4) at the time of the transaction, NuGene made the representations and warranties in good faith; and (5) between the date of the loan and the date of its next SEC filing, NuGene's financial condition deteriorated further.

In sum, Auctus has failed to demonstrate that NuGene, or any of its representatives, acted with either an intent to deceive or a high degree of reckless, see City of Dearborn Heights, 632 F.3d at 757, and Auctus' claim for securities fraud under the Exchange Act therefore fails.

### C.    Auctus' Securities Fraud Claims Fail for Other Reasons

Even setting aside the deficiencies discussed above, Auctus' allegations, at least with respect to some statements, are inadequate for other reasons.[4]

---

[3] The Court notes that the parties seem to have contemplated the possibility that the interest rate could be deemed usurious. See [ECF No. 16-5 at 23 ("If it shall be found that any interest or other amount deemed interest due hereunder violates the applicable law governing usury, the applicable provision shall automatically be revised to equal the maximum rate of interest or other amount deemed interest permitted under applicable law.")].

[4] The Court notes that the Note's maturity date is exactly nine months after it was issued. See [ECF No. 16-5 at 2 (indicating issue date of February 6, 2017 and maturity date of November 6, 2017)]. In a recent decision in another litigation involving Auctus, Judge Young considered whether a nine-month note is a "security" within the meaning of the Exchange Act. See Sauer Energy, 444 F. Supp. 3d at 280–81. Although Judge Young ultimately reserved judgment on the

11

First, some of the allegedly fraudulent statements are inactionable puffery. "The corporate puffery rule applies to loose optimism about both a company's current state of affairs and its future prospects." Fitzer v. Sec. Dynamics Techs., Inc., 119 F. Supp. 2d 12, 23 (D. Mass. 2000). "[C]laims of puffery . . . require a court to consider (1) 'whether the statement is so vague, so general, or so loosely optimistic that a reasonable investor would find it unimportant to the total mix of information' and (2) 'whether the statement was also considered unimportant to the total mix of information by the market as a whole.'" In re Boston Scientific Corp. Sec. Litig., No. 10-cv-10593, 2011 WL 4381889, at *11 (D. Mass. Sept. 19, 2011) (quoting Brumbaugh v. Wave Sys. Corp., 416 F. Supp. 2d 239, 250 (D. Mass. 2006)). The Court must therefore look to whether the allegedly misleading statement "offers . . . details on which a reasonable investor would rely . . . ." Fitzer, 119 F. Supp. 2d at 26. The statement that NuGene's "growth potential is limitless," [Compl. ¶ 19], is precisely the type of puffery that is not actionable as a matter of law. Similarly, the statement that NuGene was "look[ing] forward to beginning a long and mutually prosperous relationship [with Bassett]," [Compl. ¶ 15], does not offer any details on which a reasonable investor would rely, see Fitzer, 199 F. Supp. 2d at 26.

Second, with respect to the first three allegedly misleading statements contained in the complaint, [Compl. ¶¶ 15, 17, 19], there are no factual allegations suggesting that Auctus relied

---

issue, finding that there were other reasons why Auctus' securities fraud claim was inadequate, he did opine that, in his view, the more correct reading of the statute is that any note that matures in nine months or less is exempt from regulation as a "security." Id. Auctus appealed his order and asked the First Circuit to resolve whether a nine-month note, such as the one at issue in this case, is a "security." See Appellant's Br. at 1, Auctus Fund, LLC v. Sauer Energy, Inc., No. 20-1441 (1st Cir. Oct. 13, 2020) (identifying as one of the issues presented for review whether the district court erred "in finding that a promissory note convertible into publicly traded common stock was not a security under the Exchange Act because the note matured nine months from issuance"). The First Circuit has not yet issued a decision. Accordingly, depending on whether and how the First Circuit answers that question, Auctus' securities fraud claim may be deficient as a matter of law because the Note matures in nine months.

upon any of those statements, which were made in September 2015, October 2015, and July 2016, respectively, when it invested in NuGene in February 2017.  In fact, in his affidavit accompanying Auctus' motion, Auctus' Managing Director attested that Auctus conducted due diligence before investing in NuGene.  [ECF No. 16-1 at 2].  The notion that an investment firm contemplating a sizable investment in a company, after conducting due diligence, would nevertheless rely on vague statements that the company made, in some instances more than a year earlier, is implausible.

        **D.**        **Auctus' Other Claims**

In addition to its Exchange Act claim, which fails for the reasons discussed above, Auctus brings state law claims for securities fraud under Massachusetts' blue sky laws, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of Massachusetts' consumer protection statute.  [Compl. ¶¶ 39–65].  In its complaint, Auctus asserts that this Court has subject matter jurisdiction because its Exchange Act claim presents a federal question.  [Id. ¶ 6 (citing 28 U.S.C. § 1331 (the federal question jurisdictional statute) and the Exchange Act)].  It does not assert diversity jurisdiction, see [id. ¶¶ 6–8 (no allegations regarding diversity in "Jurisdiction and Venue" section of complaint)], or make allegations regarding the citizenship of its members, see [id. ¶¶ 4–5 (no allegations regarding its members in "Parties" section of complaint)], which is how a limited liability company's citizenship is determined, D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 125 (1st Cir. 2011) ("[F]or purposes of diversity jurisdiction [] the citizenship of a limited liability company 'is determined by the citizenship of all of its members.'" (quoting Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 54 (1st Cir. 2006))).

13

In deciding motions for default judgment, the Court "has an affirmative duty to assure itself that it has jurisdiction over both the subject matter and the parties" before entering a default judgment.  Plasterers' and Cement Masons' Local 40 Pension Fund v. Capital Curbing Corp., No. 09-cv-00236, 2010 WL 1424722, at *2 (D.R.I. Mar. 12, 2010), aff'd and adopted, 2010 WL 1376293 (D.R.I. Apr. 6, 2010).  Here, given its conclusion that Auctus has failed to state an Exchange Act claim, the Court would ordinarily decline to continue exercising supplemental jurisdiction over Auctus' state law claims.  See Rossi v. Gemma, 489 F.3d 26, 39 (1st Cir. 2007) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims.'" (quoting Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995))); Sauer Energy, 444 F. Supp. 3d at 282 (declining to exercise supplemental jurisdiction over Auctus' state law claims once it dismissed Auctus' sole federal claim).

As a general matter, a court should not *sua sponte* dismiss a complaint without providing the plaintiff with an opportunity to remedy the issue.  See Clorox Co. P.R. v. Proctor & Gamble Com. Co., 228 F.3d 24, 30–31 (1st Cir. 2000).  Accordingly, the Court will permit Auctus to amend its complaint if it wishes to do so.  The Court encourages Auctus to review this Order carefully before deciding whether to amend.  If it is unable to adequately plead a claim for federal securities fraud, and there is no other basis for subject matter jurisdiction, the Court suggests that Auctus seek relief in state court.  Should Auctus elect to amend, the Court will vacate the entry of default and Auctus will be required to file its amended complaint, serve it upon NuGene in a manner that complies with the Federal Rules of Civil Procedure, and, assuming NuGene does not respond, seek another entry of default and file a renewed motion for default judgment.  See Merullo v. Greer, No. 11-cv-00116, 2011 WL 3585957, at *2–5 (D.N.H.

July 25, 2011) (finding complaint inadequate and therefore vacating entry of default, denying motion for default judgment, granting plaintiff's motion to amend, and requiring plaintiff to serve the amended complaint), report and recommendation adopted, 2011 WL 3607722 (D.N.H. Aug. 12, 2011).

## IV.  CONCLUSION

Accordingly, for the reasons set forth above, Auctus' motion for default judgment, [ECF No. 16], is DENIED.  If Auctus intends to file an amended complaint, it shall notify the Court of its intent to do so no more than seven (7) days after the entry of this Order.  Otherwise, its complaint will be dismissed, without prejudice to its state law claims, and this case will be closed.

**SO ORDERED.**

March 19, 2021                                                                                /s/ Allison D. Burroughs
                                                                                                          ALLISON D. BURROUGHS
                                                                                                          U.S. DISTRICT JUDGE